UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RICHARD SELBY,

   Plaintiff(s),

vs.

GRANGER WHITELAW;
BLUE CAR PARTNERS, INC.

   Defendant(s).

-------------------------------------------------------x

THIRD
AMENDED
COMPLAINT

Civil Action: 1:10-cv-07267-LTS

Plaintiff Richard Selby brings this action through his attorney Bridget E. Butler, Esq., against Granger Whitelaw, and Blue Car Partners, Inc., and alleges as follows:

## OVERVIEW

1. Plaintiff Richard Selby [hereinafter "Selby" or "Plaintiff"] brings this action to recover monies which have been wrongfully withheld and taken as part of a conspiracy to defraud Plaintiff. Plaintiff had an ongoing business relationship with Defendant Granger Whitelaw [hereinafter "Whitelaw"] and Blue Car Partners Inc. [hereinafter "Blue Car"].

2. Whitelaw solicited capital investments from Plaintiff for various start-up companies over the course of several years, in conjunction with his company Blue Car. Whitelaw and several business associates/employees, namely Ryan C. Gray [hereinafter "Gray"] and Brian Brick corresponded with Plaintiff regarding these investments. Whitelaw identified himself as a stock promoter with inside information regarding news of several

7. In June 2006, Defendant Whitelaw approached Plaintiff requesting a $35,000 investment into Vemics, a Delaware corporation with a principal place of business in Nanuet, New York. Vemics – Imedicor is a company claiming to run a national healthcare communication network. Vemics was a thinly traded small company which did not meet the listing requirements of NASDAQ Stockmarket or a national exchange. Vemics trades in the "over the counter" markets and is listed on OTC-Bulletin Board as "VMCI". The company stock is microcap or "penny" stock because it is valued under $5 per share. Whitelaw was a director of Vemics in 2005 and still is presently. Whitelaw made representations that this stock was "hot". Whitelaw then pressured Plaintiff to authorize a wire transfer of $35,000 into Defendant's account for the investment in Vemics. Whitelaw promised to transfer 25,000 of his own shares of VMCI to Plaintiff in exchange.

8. Plaintiff proceeded to authorize a wire transfer of $35,000 on or about June 2, 2006, directly to a bank account of Whitelaw in New Jersey. Defendant subsequently transferred his stock certificates to Plaintiff, worth 25,000 shares of common stock. The value of Vemics dropped dramatically in the coming weeks. Plaintiff later sold his shares for almost a total loss.

9. Plaintiff was also retained by Defendant Whitelaw, to be consultant under contract for a potential new company, Valiant Holding, Inc., [hereinafter "Valiant"]. Pursuant to the contract, Plaintiff was to work for Valiant and submit monthly invoices to Whitelaw or Blue Car, to be subsequently paid, on the 16th of every month, a salary of $10,000, plus

3

expenses. Plaintiff worked from May 15 through June 15 and sent and invoice for this time to Blue Car, seeking the base salary of $10,000, plus $473 for expenses. Whitelaw paid Plaintiff in two installments of $5000 but never reimbursed him for the $473 in expenses. Plaintiff worked for the time period of June 15 through July 15 of 2006 and subsequently billed Blue Car for $11,000, including the base salary of $10,000 and another $1000 for his expenses. Plaintiff worked for the time period of June 15 through July 15 of 2006, and has never received payment for this work performed.

10. Plaintiff had been retained by Whitelaw to perform his consulting services and he was paid by Whitelaw directly, not Blue Car. Blue Car is grossly undercapitalized and has no current operating status. There is no evidence that Blue Car ever turned a profit. There is no evidence that Blue Car was ever in a position to pay Plaintiff any compensation beyond what Whitelaw paid on its behalf.

11. At all times relevant to this action, Plaintiff Selby, is an individual maintaining a primary residence and principal place of his consulting business, Mainstreet Commercial Group, LLC, at 5215 Ingersoll Avenue, Des Moines, Iowa 50312. Mainstreet Commercial Group, LLC is an Arizona Limited Liability Company. Selby is the President of Mainstreet Commercial Group, LLC and the only individual affiliated with it.

12. At all times relevant to this action, Blue Car was a New York corporation maintaining a principal place of business at The Chrysler Building, 405 Lexington

Avenue, 26th Floor, New York, New York 10174.

13. At all times relevant to this action, Whitelaw was a resident of the state of New Jersey, who maintained a primary residence at 307 Cooper Road, Red Bank, New Jersey 07701. Whitelaw was the President and sole operator, and manager, of Blue Car. Upon information and belief, Granger Whitelaw also maintains a residence at 8 Johnny Court Red Bank, NJ 07701.

## JURISDICTION AND VENUE

14. Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this action because (a) there is complete diversity between Plaintiff, an Iowa resident, and all three defendants, with residency and principal places of business in New York or New Jersey, and (b) the amount in controversy is over $75,000. This case also involves a violation of federal law, Section 5 of the Securities Act 15 U.S.C. section 77.

## STATEMENT OF FACTS

15. Whitelaw solicited investments from Plaintiff for various start-up companies over the course of several years. Whitelaw and several business associates/employees, namely Ryan C. Gray [hereinafter "Gray"] and Brian Brick corresponded with Plaintiff regarding these investments. Plaintiff did invest in several of these companies. This action seeks to recover monies intended for investment in two American companies –

First Asia Fuel, and Vemics, in addition to compensation for work performed.

## FIRST ASIA FUEL

16. Plaintiff corresponded with Defendant regarding this particular investment over the course of several months at the end of 2005 and January 2006. Plaintiff agreed to invest $50,000 in First Asia Fuel after reviewing a written business plan for the company. On January 17, 2006, Plaintiff did receive the requested information regarding First Asia Fuel from Gray.

17. On January 20, 2006, Plaintiff executed a bank transfer of $50,000 to a client trust account, of Whitelaw's counsel in Beverly Hills, CA, intended for investment in First Asia Fuel. Gray forwarded a stock purchase agreement for Plaintiff for his execution and instructed him to fax back an executed copy and send an original to: Alkizia Investments, Inc., c/o Univalor Liaison Office, 14 Rule Kleberg, 1201 Geneva, Switzerland.

18. Subsequent to the transfer to California, on January 20, 2006, an outgoing wire transfer was made from the client trust account to Univalor Trust S.A., Geneva, Switzerland, for Alkizia Investment Corp., in the amount of $50,000, for 50,000 shares of First Asia Fuel. The receipt of this bank transaction was obtained upon request by Plaintiff who inquired what was done with his money.

19. Upon information and belief, Plaintiff's $50,000 investment was used to fund an audit of a different company, Alkizia Investment Corporation, without Plaintiff's consent.

20. Recently, Plaintiff discovered through Pacific Stock Transfer Company that 50,000 Shares of common stock in First Asia Fuel was issued, in Certificate Number 126, to Plaintiff, c/o Granger Whitelaw, on June 29, 2006, six months after the wire transfer and Plaintiff's execution and submission of a stock transfer agreement. Plaintiff never received this certificate.

21. Around June 2006, Selby met with Whitelaw at his New Jersey home. At this meeting Whitelaw presented Selby requested the stock certificates for First Asia Fuel, which he had agreed to pick up from Whitelaw, at that time. Whitelaw presented him with stock certificates for another entity called Jokebook.net. Selby refused to accept this alternative and demanded the certificates for First Asia Fuel.

22. To date, despite repeated demands, Plaintiff never received stock certificates for First Asia Fuel, in a timely manner, or any proof of ownership in this company or any other, much less any refund of the $50,000 investment, or any monies for the value of the stock purchase.

23. None of the defendants filed a Form 144 Notice of Proposed Sale with the SEC, detailing compliance with SEC Rules 144 [17 C.F.R. section 230, 144].

## VEMICS

24. In June 2006, Defendant Whitelaw approached Plaintiff requesting a $35,000 bridge investment into Vemics, Inc., ["Vemics"], a Delaware corporation with a principal place of business in Nanuet, New York. Whitelaw made representations regarding the value of this stock. Whitelaw described this stock as "hot" and pressured Plaintiff

7

to purchase some of his shares in Vemics, immediately. Whitelaw then pressured Plaintiff to authorize a wire transfer, of $35,000, into Defendant's account for the investment in Vemics, in exchange for 25,000 shares of Vemics common stock.

25. Plaintiff proceeded to authorize a wire transfer of $35,000 on or about June 2, 2006. Whitelaw then transferred Plaintiff his 25,000 shares of common stock.

26. Shortly thereafter the value of the stock dropped dramatically.

27. Whitelaw held himself out to be an "insider" to Vemics. He had been on the Board of Directors for Vemics, up through 2005 and he is currently holds that same position. Whitelaw never filed any required documents with the SEC, in accordance with various rules under the Securities and Exchange Act of 1933, which he was required to do as an affiliate of an issuer of restricted stock, and/or an insider in control of restricted stock. Plaintiff does not qualify as an "accredited investor" under this Act. Whitelaw never filed any documents regarding the above mentioned stock transactions, the $50,000 transfer for First Asia Fuels, and then the $35,000 transfer for Vemics, with the Securities and Exchange Commission, in violation of Section 5 of the Securities Act [15 U.S.C. section 77e and section 77d(1)].

28. Plaintiff subsequently sold the stock, on the open market, for a fraction of the price he paid for it, realizing almost a total loss.

## VALIANT

29. Plaintiff was also retained by Defendant Whitelaw, to be a consultant under agreement for him and his new venture Valiant. Plaintiff was to bill Blue Car Partners. Whitelaw expressed his intention that Plaintiff eventually become Chief Executive

8

Officer of Valiant. Whitelaw stated that he founded Valiant and has been mentioned as a "partner" of Valiant in the media. Pursuant to the agreement, Plaintiff was to work for Valiant and be subsequently paid, on the 16th of every month, a salary of $10,000 plus expenses. A written agreement was drafted but Whitelaw refused to sign it.

30. Plaintiff performed work, in accordance with the agreement, from May 15, 2006 through June 15, 2006, and sent an invoice to Blue Car, for $10,473.00, which included the base salary plus $473 for expenses. Defendant Whitelaw personally paid this invoice in two installments of $5000. Plaintiff was never reimbursed for the $473 of expenses.

31. Plaintiff performed work, in accordance with the agreement, from June 15, 2006 through July 15, 2006, and sent an invoice to Blue Car, for $10,000 plus $1000 for expenses, for a total of $11,000 for that pay period. Plaintiff never received any dispute of this invoice in writing. Plaintiff never received any payment on this invoice. Plaintiff ceased performing any work, pursuant to the agreement, after this pay period. Plaintiff has repeatedly demanded payment from Whitelaw. Plaintiff has never received any payment for the outstanding $11,000 balance.

32. There is no evidence of any adequate capitalization of Blue Car. Blue Car is not operational. Blue Car was operated like a "dummy corporation". The office space

for Blue Car was a virtual office. All monies paid to Plaintiff, with regard to his work performed as it related to Blue Car was paid directly from Defendant Whitelaw's personal account. There is scant evidence that Blue Car ever had any assets.

## FIRST CLAIM FOR RELIEF

### Violation of Section 5 of the Securities Act 15 U.S.C. section 77

33. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

34. Whitelaw violated Section 5 of the Securities Act [15 U.S.C. section 77e and section 77d(1)]. Whitelaw promoted stock in First Asia Fuel and Vemics, as an insider, but failed to file a Rule 144 Notice of Proposed Sale for the sale of 50,000 restricted shares of First Asia Fuel and the sale of 35,000 shares of Vemics.

35. Whitelaw violated Section 5 of the Securities Act [15 U.S.C. section 77e and 77d(1) because he is an affiliate who cannot rely on the Rule 144 [17 C.F.R. section 230.144] safe harbor, or Section 4(1) [15 U.S.C. section 77d(1)] exemption, for the resale of 50,000 shares of First Asia Fuel stock.

36. Whitelaw violated Section 5 of the Securities Act [15 U.S.C. section 77e and 77d(1) because he is an affiliate who cannot rely on the Rule 144 [17 C.F.R. section 230.144], or Section 4(1) [15 U.S.C. section 77d(1)] exemption, for the resale of 35,000 shares of Vemics stock.

37. Plaintiff has suffered the loss of his $50,000 investment in First Asia Fuel and $35,000 investment in Vemics, as a result of Whitelaw's violations of Section 5 of

the Securities Act 15 U.S.C. section 77.

## SECOND CLAIM FOR RELIEF

### Common Law Fraud

38. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

39. Defendant Whitelaw contacted Plaintiff regarding a stock purchase in a new company First Asia Fuel. Plaintiff orally agreed to invest $50,000 in this company.

40. The aforementioned agreement was oral in nature, and was based on good faith dealing, given the prior investment relationship between the parties.

41. At the time the Defendant made the representations to Plaintiff, the representations were clearly false.

42. At the time that Defendant made such representations to Plaintiff stating on numerous occasions that the investment would be for Plaintiff's stock ownership in First Asia, Fuel, Defendant knew that such representations were false.

43. At the time that Defendant made such representations to Plaintiff, Defendant intended for Plaintiff to act upon it by transferring a large sum of money to an agent of Defendant.

44. At the time that Defendant made such representations to Plaintiff, Plaintiff reasonably believed them to be true and Plaintiff was totally unaware of their falsity. Plaintiff researched the existence of First Asia Fuel and consulted an attorney regarding the investment decision.

45. Plaintiff reasonably relied on Defendant's representations and transferred $50,000 to

11

oral agreement, for Plaintiff to transfer $50,000 to Defendant's attorney in California for the purpose of purchasing stock in First Asia Fuel.

54. Defendant breached his duty of due care by misrepresenting to Plaintiff that he would transfer to him, stock certificates representing his ownership in First Asia Fuel, after Plaintiff reasonably relied on the misrepresentations and transferred the $50,000 and executed a stock purchase agreement.

55. Plaintiff did reasonably rely on the repeated and consistent statements of Defendants affirming and reaffirming the investment and Plaintiff's stock ownership in First Asia Fuel.

56. Plaintiff did not receive any proof of ownership of stock in First Asia Fuel and upon demand that his $50,000 investment be returned, Plaintiff received nothing.

57. Accordingly, Plaintiff suffered damages in the amount of his investment of $50,000.

## FOURTH CLAIM FOR RELIEF

### Common Law Breach of Contract

58. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

59. Plaintiff duly and faithfully performed under the agreement to transfer his funds in the amount of $50,000 to an agent of Defendant, for the purpose of purchasing stock in First Asia Fuel.

60. The aforementioned agreement was in good faith and was coupled with full performance by Plaintiff.

61. Plaintiff came to realize that Defendant was not delivering any proof of Plaintiff's

13

stock ownership in First Asia Fuel.

62. Plaintiff came to realize that his investment was wrongfully sent to a Swiss bank with no connection to First Asia Fuel.

63. Plaintiff demanded his $50,000 investment be returned immediately as well as rescinded the contract.

64. To date, Defendant has refused to deliver to Plaintiff the $50,000 refund of his intended investment.

65. By reason of the foregoing, Defendant is indebted to Plaintiff for money had and received by Defendant on behalf of Plaintiff and wrongfully withheld, all to the monetary damage of Plaintiff.

## FIFTH CLAIM FOR RELIEF

### Common Law Fraudulent Misrepresentation – Pump and Dump

66. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

67. Defendant Whitelaw contacted Plaintiff regarding the immediate purchase of Defendant's stock in a new company, Vemics, at which Whitelaw had been on the Board of Directors and owned controlled stock. Plaintiff orally agreed to purchase 25,000 shares of Defendant's stock in Vemics for $35,000.

68. The aforementioned agreement was oral in nature, and was based on good faith dealing, given the prior investment relationship between the parties.

69. At the time the Defendant made the representations to Plaintiff, the representations were clearly false.

70. At the time that Defendant made such representations to Plaintiff, Defendant intended Plaintiff to act upon it by transferring a large sum of money directly to Defendant.

71. At the time Defendant made such representations to Plaintiff, Defendant described the Vemics stock to be "hot", meaning it was projected to rise, in value, quickly in the near future.

72. Plaintiff reasonably relied on Defendant's representation and transferred $35,000 to Defendant with the reasonable belief that he was making an good investment in Vemics, at a certain value and Plaintiff was totally unaware of the falsity of Defendant's statements.

73. Plaintiff had a right to rely on Defendant's representations because they had a prior investing relationship and Defendant was in the business of soliciting investments and Vemics was an actual registered entity, traded on the OTC – Bulletin Board.

74. Subsequent to the transfer of funds, the value of Vemics stock dropped significantly.

75. In the subsequent months, Plaintiff has made several oral and written demands regarding this investment and for his stock certificate, or a refund of his investment.

76. To date, Plaintiff has never received any a return on his $35,000 investment and finally sold the stock, on the open market at such a low price to warrant almost a complete loss of his entire investment.

77. Accordingly, the agreement between the parties is void and Plaintiff has suffered damages equivalent to the $35,000 wire transfer for investment in Vemics.

performance by Plaintiff.

86. Plaintiff came to realize that Defendant misrepresenting the value of the stock.

87. Plaintiff demanded his $35,000 investment be returned immediately as well as rescinded the contract.

88. To date, Defendant has refused to deliver to Plaintiff the $35,000 refund of his intended investment, while Plaintiff finally sold the stock at a small fraction of what he paid for it, on the open market.

89. By reason of the foregoing, Defendant is indebted to Plaintiff for money had and received by Defendant on behalf of Plaintiff and wrongfully withheld, all to the monetary damage of Plaintiff.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment

90. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

91. As a result of the conduct described above, Defendant has been and will be unjustly enriched at the expense of Plaintiff. Specifically, Defendant Whitelaw's unfair and illegal practices in misrepresenting the value of VMCI common stock to induce Plaintiff's $35,000 purchase of Defendant's 25,000 shares, in addition to, Defendant Whitelaw's unfair and illegal practices in misrepresenting his intentions regarding the First Asian Fuel stock purchase and his failure to compensate Plaintiff for work performed as for Defendant Whitelaw's Valiant project-all unjustly enriching Defendant Whitelaw, at an amount to be proven at trial.

92. Defendant Whitelaw should be required to disgorge this unjust enrichment.

## NINTH CLAIM FOR RELIEF

Whitelaw does not so control the actions of Blue Car that are complained of herein, Defendant Whitelaw intentionally misleads the public, and intentionally misled Plaintiff, about the structure of Blue Car, which results in serious confusion about Blue Car and Whitelaw and how they interact. This is accomplished through misleading statements made to Plaintiff and to disseminated to the public on the internet, regarding the relationship between Blue Car and Whitelaw. To the extent that the shell corporate structure separates Blue Car from Whitelaw, such corporate formalities should be disregarded.

105. Defendant Whitelaw has created the Blue Car corporate structure to avoid his duties to customers, employees, independent contractors like Plaintiff consultant, and to shelter his wrongdoings from judicial and/or administrative oversight.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Richard Selby respectfully requests that this Court enter a judgment:

A. Finding Defendant Whitelaw violated Section 5 of the Securities Act [15 U.S.C. section 77e];

B. Finding Defendant Whitelaw wrongfully misrepresented to Plaintiff that he would invest $50,000 in First Asia Fuel on behalf of Plaintiff;

C. Finding Defendant Whitelaw breached his contract with Plaintiff that he would invest $50,000 in First Asia Fuel on behalf of Plaintiff;

D. Finding Defendant Whitelaw wrongfully misrepresented to Plaintiff the value of his stock in Vemics, by artificially inflating the stock price to induce Plaintiff to transfer $35,000 for 25,000 shares of Vemics, as is alleged in this Complaint;

E. Finding Defendant Whitelaw breached his contract with Plaintiff regarding the sale of his 25,000 shares in Vemics common stock for $35,000; and

F. Finding that Defendant Whitelaw breached an agreement with Plaintiff by failing to pay him, on a valid account stated, for his work performed for Defendant Whitelaw's Valiant project, in June through July 2006; and

G. Order judgment against Defendant in the amount of $96,000 as is the equivalent of Plaintiff's investments in First Asia Fuel and Vemics (totaling $85,000), in addition to, the outstanding $11,000 of compensation owed for work performed at Valiant;

H. Order judgment against Defendant Whitelaw for restitution;

I. Order judgment against Defendant Whitelaw for disgorgement of ill-gotten gains as set forth herein;

J. Order judgment against Defendant Whitelaw for punitive damages in the amount of $850,000.

K. Interest at a rate to be determined by the Court;

L. Costs associated with bringing this action including attorneys fees, filing fees, and service of process fees.

M. Such further relief as this Court deems fair and reasonable.

Dated: January 20, 2011
New York, New York                      Respectfully Submitted,

*[Signature: Bridget Butler]*

Bridget E. Butler
Attorney for Plaintiff, Richard Selby
Law Office of Bridget Butler, Esq.
12 Desbrosses Street
New York, New York 10013
(917) 328-7144